## Elizabeth Oliver *v.* Reading Iron Company, Appellant.

*Sale—Change of Possession—Fraud—Evidence.*

The Supreme Court will not reverse a judgment on a verdict in favor of plaintiff in a feigned issue to determine the ownership of personal property, where it appears by the evidence that plaintiff's vendor took possession of the property under a bill of sale, for a full consideration, from the original owners who were the judgment debtors of the defendant; and where the integrity of the transaction and the sufficiency of the possession taken and maintained in consummation of them, is established by the verdict of the jury in accordance with the evidence.

The bill of sale in such a case being the foundation of plaintiff's claim to the property, was properly admitted in evidence, and the question whether it formed a part of a scheme to defraud the creditors of the makers · of it was for the jury.

Argued Feb. 21, 1895.    Appeal, No. 284, Jan. T., 1895, by defendant, from judgment of C. P. Schuylkill Co., Nov. T., 1893, No. 277, on verdict for plaintiff.    Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Feigned issue to determine the ownership of personal property.    Before BECHTEL, J.

The facts appear by the opinion of the Supreme Court.

The court admitted under objection and exception the bill of sale from the Anthracite Brass Works to William Calloway, plaintiff's vendor, of the property in dispute. [1]

The court charged in part as follows :

" [We have thus in a brief way directed your attention to the testimony in this case, and really the question that is presented in this case, as we understand the law and the evidence that has been presented to you, is one of this character : Was the sale by the Anthracite Brass Works to Calloway honest, bona fide and fair ?    If you take the testimony of Calloway and the parties who were present there, then it appears that Calloway had indorsed for that firm, was liable and required to pay $1,750 ; that they gave him a bill of sale to secure and protect him.    They would have a lawful right to do that, if it was an honest transaction.

" But if, upon the other hand, you believe this testimony

that is presented here, and these papers as presented here, relating to the Calloway sale, and therefore you should find from all this evidence, the oral testimony and the papers, that this transaction was honest, bona fide and fair, not intended to hinder and delay, or cheat and defraud creditors of the Anthracite Brass Company, but that Calloway was simply protecting himself in an honest way for that which he had been required to pay by reason of his indorsement ; that he took open, notorious, visible, actual, exclusive possession and continued in that possession of the property in question, keeping in view the nature and character of the property, then the sale would be good and it would pass the title to Calloway.

" Taking all this evidence, where is there any evidence to show that either of these transactions was dishonest? Where is there anything to show it was fraudulent or intended to hinder and delay, defeat or defraud any creditor?] " [2]

Defendant's points were as follows :

" 1. That if from the evidence the jury find said alleged sale and purchase to and by the plaintiff to have been honest and for value, yet that there was not such an open, notorious and visible change of possession from the Anthracite Brass Works to Calloway, the alleged assignee, as would be apparent to the public, the same is a fraud in law, and not binding on the defendant, one of the creditors of the Anthracite Brass Works at the time of said alleged sale to Calloway, and the verdict must be for the defendant. *Answer :* If there was not such visible, open, notorious, actual, exclusive and continued possession as the property, considering its nature and character, was capable of, accompanying the purchase, it would be void as to the creditors of the firm, and if you so find, the verdict should be for the defendant.

" We will add to what we have said in relation to taking possession of property that you must consider, as we have said to you, the nature and character of the property in deciding what is a sufficient change of possession. For instance, if I were to sell either one of you a horse you could take possession of the horse and lead him away ; that would be one way of taking possession. If I should sell you the Merchants' Hotel with its furniture, you would expect to keep the furniture in the hotel, and I might deliver possession by going away myself and leav-

ing you at the hotel with the furniture.  If you were to sell a foundry you could deliver possession of the foundry by the party who sells going away from it and leaving the party who buys to go into possession of it.  That would be one way to deliver possession, and that is what Calloway and the claimant in this issue claim was done in this case; that the Anthracite Brass Works people went away from the property, and they took the possession of it, as they testify here, in the way they testify, in the month of June or July.  So it will be proper for you to consider that, when you decide whether or not the possession was such as the nature and character of the property would require. [3]

" 2.  That if from the evidence the jury find that the property in question was after the alleged sale from the Anthracite Brass Works to Calloway up to the time of the levy by the defendant's execution kept in the same building where the Anthracite Brass Works did business, then at the least (if in all other respects the possession was perfect) it would not be an exclusive possession in Calloway, and the verdict must be for the defendant.  *Answer:*  We cannot say to you that the property was or was not in the exclusive possession of Calloway.  Whether or not it was is a question of fact for you to determine, and we have already instructed you as to the character of possession that is necessary to make title.  We will add this, that although this property may have been in the building referred to in this point belonging to the Anthracite Brass Works, it would not follow that it was in the possession of the Anthracite Brass Works.  It might still be in the possession of Calloway, to the entire exclusion of the owners of the building.  The question is whether it was in possession of Calloway, as Calloway and those who were present at the alleged transfer testify, and that is a question for you to determine. [4]

" 3.  That from all the evidence the alleged sale to Calloway was and is a fraud in law by reason of there being no such change of possession, an open, notorious, visible, apparent, exclusive possession, as in this case is required by law, and the verdict must be for the defendant.  *Answer:*  This asks us to direct you to find a verdict in favor of the defendant, the Reading Iron Company, and we refuse to do so because we do not

think we have the right to do so, and leave it to you as a question of fact to say what your verdict shall be in this case. [5]

"4. That from all the evidence the jury would not be justified in finding for the plaintiff.  *Answer:* This asks us to say that there is not sufficient evidence here to warrant you in finding a verdict in favor of the claimant, Elizabeth Oliver. We decline to say that to you, but leave you to say whether you believe this evidence, and if you believe this evidence, and find the facts to be that there was such an actual change of possession as we have heretofore explained to you, for a consideration, as claimed by the claimant, and that that possession was exclusive and continued, open, notorious and visible, and not intended to hinder and delay or cheat and defraud the creditors of the Anthracite Brass Company, then you would be warranted in finding a verdict in favor of the claimant.  For that reason we decline to instruct you as we are asked to instruct you in this last point.  We leave the whole matter to you as a question of fact under all the evidence, and that which we have endeavored to explain to you as to the rights of these parties so far as the law is concerned.  You shall say what this verdict shall be.  As we have already stated to you, you have nothing to do with dollars and cents, or with property. All you say is, we find for the defendant, or, we find for the plaintiff, for the property described in the issue.  It will be sufficient even to say we find for the plaintiff, or we find for the defendant." [6]

Verdict and judgment for plaintiff.  Defendant appealed.

*Errors assigned* were, (1) rulings on evidence, quoting the bill of exceptions ; (2–6) above instructions, quoting them.

*J. O. Ulrich,* for appellant.—There was sufficient evidence to show fraud: Bughman v. Central Bank, 159 Pa. 94; Janney v. Howard, 150 Pa. 339; Ditman v. Raule, 124 Pa. 225; Buckley v. Duff & Sons, 114 Pa. 596; Stephens v. Gifford, 137 Pa. 219.

Calloway did not take possession of the property under his bill of sale, nor did he take possession of any kind until he levied upon it under his judgment, which was proof that he did not claim it as his property, otherwise he could not levy

upon it, but thereby declared it to be the property of the Anthracite Brass Works, or Wheeler, Oliver and Stevens, and if he claimed it at all he would have to do so by virtue of his execution which he stayed before return day, and abandoned the property; this act postponed him to subsequent execution creditors: Weir v. Hale, 3 W. & S. 285; Truitt v. Ludwig, 25 Pa. 145; Freeburger's App., 40 Pa. 244; McClure v. Ege, 7 Watts, 74; Eberle v. Mayer, 1 Rawle, 366; Hickman v. Caldwell, 4 Rawle, 376; Landis v. Evans, 113 Pa. 332.

The bill of sale from Wheeler, Oliver and Stevens to Calloway should not have been admitted in evidence because Calloway had not taken possession of the property under it, and it was improper to show title through it: Tisch v. Utz, 142 Pa. 186; Coover's App., 29 Pa. 9.

*H. B. Graeff*, for appellee.—If the sale to Calloway was an honest transaction and the possession of Calloway thereunder was open, visible, notorious, continued and exclusive up to the time of the sale of the property to her, plaintiff took a good title thereto, and whether there was such a delivery of possession as the subject-matter was capable of and the bona fides of the transaction are questions for the jury: Dunlap v. Bournonville, 26 Pa. 72; Born v. Shaw, 29 Pa. 288; McKibben v. Martin, 64 Pa. 352; Evans v. Scott, 89 Pa. 136; Pearson v. Carter, 94 Pa. 156; Crawford v. Davis, 99 Pa. 576.

OPINION BY MR. JUSTICE McCOLLUM, October 7, 1895:

Abram Oliver, Sidney Stevens and William Wheeler were partners under the firm name of the Anthracite Brass Works, and as such once owned the property which is the subject of contention in this issue. At their solicitation William Calloway made or indorsed notes for their benefit to the amount of $2,000, and to secure him against loss in the event of their failure to pay the notes they executed and delivered to him their bond in that sum, together with a bill of sale of their partnership effects. Calloway having been compelled to pay $1,750 on the notes he made or indorsed for them, entered judgment on their bond, issued an execution on the judgment, and levied on the effects so transferred to him. Subsequently, acting under the advice of his counsel he stayed the

execution, paid the costs upon it, and took possession of the property under and by virtue of his bill of sale. He had exclusive possession of such portion of the property covered by the bill of sale as is the subject of this litigation until he sold the same to Elizabeth Oliver, the appellee, who had a like possession of it until it was levied upon by virtue of a writ issued on a judgment obtained against the Anthracite Brass Works by the Reading Iron Company, defendant in the issue and appellant here. The possession thus taken and maintained was acquired at least two months before the last mentioned judgment was entered and at least one month before the suit which resulted in it was brought. While it is alleged that the transaction between Calloway and the copartners was fraudulent as to the creditors of the latter, the bona fides of it appears in the uncontradicted testimony and is established by the verdict of the jury. The same may be said of the transaction between him and the appellee. It was a sale of the property for its full value and there was nothing in the nature of it or in the evidence affecting it which would warrant the conclusion that there was a fraudulent purpose in it. We think the evidence and the verdict responsive to it furnish a sufficient answer to the imputation of actual fraud in the transfer of the property to Calloway or in the sale of it to Mrs. Oliver, and that elaborate discussion or further consideration of this part of the appellant's complaint is unnecessary. We think so because the evidence is uncontradicted, apparently credible, and consistent only with the integrity of the transactions which the appellant's contention assails, and because the jurors who heard, considered and passed upon it, under proper instructions from the court, accepted it as true.

We have referred to the possession of the property by Calloway and his vendee as "exclusive." Our warrant for so characterizing it is the verdict. The jury were plainly instructed that if the possession was not exclusive the transaction was void as to the partnership creditors, and the verdict should be for the defendant in the issue. The verdict therefore embraces a finding that the parties claiming the property under the bill of sale had exclusive possession of it at least a month before the suit in which the appellant obtained judgment against the Brass Works was instituted. This finding

is well sustained by the evidence. In fact a different finding was not possible if the witnesses who testified in regard to the change of possession were believed.

The integrity of the assailed transactions and the sufficiency of the possession taken and maintained in consummation of them being established by a verdict in accordance with the evidence it remains to inquire whether the court committed any error which contributed to the result of which the appellant complains. It is alleged first, that the court erred in overruling the objections to the admission in evidence of the bill of sale from the Anthracite Brass Works to Calloway. The objections to its admission were that it was irrelevant and fraudulent. As it was the foundation of Calloway's title to the property he sold to Mrs. Oliver and the question whether it formed part of a scheme to defraud the creditors of the makers of it was for the jury, we are unable to see any force in either objection. We think the bill of sale was properly admitted and we therefore overrule the first specification. The remaining specifications are founded upon instructions which appear to us as adequate, impartial and correct. A careful perusal of the charge including the points and the answers to them has satisfied us that there is nothing in it of which the appellant has just cause to complain. All the specifications relating to it are accordingly overruled.

Judgment affirmed.